_____

No. 14-1945
_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT**
_____

**STEPHEN V. KOLBE,** *et al.***,**

                    *Plaintiffs-Appellants,*

v.

**LAWRENCE J. HOGAN, JR., GOVERNOR,** *et al.***,**

                    *Defendants-Appellees.*
_____

On Appeal from the United States District Court
for the District of Maryland
(Catherine C. Blake, District Judge)
_____

**PETITION FOR REHEARING *EN BANC***
_____

BRIAN E. FROSH
Attorney General of Maryland

MATTHEW J. FADER
JENNIFER L. KATZ
Assistant Attorneys General
200 St. Paul Place, 20th Floor
Baltimore, Maryland 21202
(410) 576-7906
mfader@oag.state.md.us

February 18, 2016                    Attorneys for Appellees

# TABLE OF CONTENTS

RULE 35(B)(1) STATEMENT ..................................................................1

STATEMENT ..........................................................................................2

REASONS FOR GRANTING REHEARING *EN BANC* .........................................7

I.  THE PANEL MAJORITY'S DECISION CONFLICTS WITH THE DECISIONS OF ALL OTHER COURTS OF APPEALS TO HAVE REVIEWED THE CONSTITUTIONALITY OF SIMILAR LAWS. ............................................7

II. THE APPLICABLE LEVEL OF SCRUTINY IS A MATTER OF EXCEPTIONAL IMPORTANCE, AND THE MAJORITY ERRED IN APPLYING STRICT SCRUTINY. ..................................................................9

III. THE CONSTITUTIONALITY OF MARYLAND'S FIREARM SAFETY ACT SUBSTANTIALLY AFFECTS PUBLIC SAFETY AND IS THEREFORE A MATTER OF EXCEPTIONAL IMPORTANCE. ......................................14

CONCLUSION .......................................................................................15

# TABLE OF AUTHORITIES

## Cases

*Bonidy v. U.S. Postal Serv.*, 790 F.3d 1121 (10th Cir. 2015) .................................. 12

*City of Boerne v. Flores*, 521 U.S. 507 (1997) ......................................................... 12

*District of Columbia v. Heller*, 554 U.S. 570 (2008) ....................................... passim

*Friedman v. City of Highland Park*, 784 F.3d 406 (7th Cir. 2015) ................... 1, 6, 8

*Fyock v. Sunnyvale*, 779 F.3d 991 (9th Cir. 2015) ........................................... 1, 8, 9

*Heller v. District of Columbia*, 670 F.3d 1244 (D.C. Cir. 2011) ...................... 1, 3, 8

*Jackson v. City of San Francisco*, 746 F.3d 953 (9th Cir. 2014) ............................ 13

*Kachalsky v. County of Westchester*, 701 F.3d 81 (2d Cir. 2012) .......................... 13

*Kolbe v. O'Malley*, 42 F. Supp. 3d 768 (D. Md. 2014) ..................................... 4, 5, 8

*McDonald v. City of Chicago*, 561 U.S. 742 (2010) ................................... 9, 12, 15

*National Rifle Ass'n of Am., Inc. v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 700 F.3d 185 (5th Cir. 2012) ...................................................... 13

*New York State Rifle & Pistol Ass'n, Inc. v. Cuomo*, 804 F.3d 242 (2d Cir. 2015) ................................................................ 1, 8, 9, 11

*Tyler v. Hillsdale County Sheriff's Dep't*, 775 F.3d 308 (6th Cir. 2014), *reh'g en banc granted* (6th Cir. Apr. 21, 2015) ..................................................... 13

*United States v. Masciandaro*, 638 F.3d 458 (4th Cir. 2011) ........................... 13, 15

*Woollard v. Gallagher*, 712 F.3d 865 (4th Cir. 2013) ......................................... 4, 13

## Statutes

Md. Code Ann., Crim. Law § 4-301 ............................................................................ 3

Md. Code Ann., Crim. Law § 4-303(a) ....................................................................... 3

Md. Code Ann., Crim. Law § 4-305 ............................................................................ 3

## Other Authorities

4 Blackstone, Commentaries on the Laws of England (1769) ................................. 7

H.R. Rep. 103-489 ........................................................................................... 3, 4

## Constitutional Provisions

U.S. Const. amend. II .......................................................................... passim

# RULE 35(B)(1) STATEMENT

This appeal presents a Second Amendment challenge to a Maryland law prohibiting the possession and transfer of assault long guns and the transfer of large-capacity detachable magazines, a law enacted by the Maryland General Assembly to protect public safety and to reduce the destructive effects of firearm violence. Appellees seek rehearing *en banc* on the questions whether, if the laws implicate the Second Amendment, the district court correctly identified intermediate scrutiny as the appropriate basis for testing the statute's validity and whether the lower court correctly upheld the statute. Those are questions of exceptional importance for the following reasons:

1. There is a direct conflict between the panel majority's decision, which vacates the district court's decision and directs the lower court to apply strict scrutiny, slip op. at 40, 45-46, and the decisions of all four other courts of appeals to have considered challenges to similar laws. Each of those other courts rejected strict scrutiny in upholding the laws, *see New York State Rifle & Pistol Ass'n, Inc. v. Cuomo*, 804 F.3d 242, 260-64 (2d Cir. 2015) ("*NYSRPA*"); *Friedman v. City of Highland Park*, 784 F.3d 406, 410-12 (7th Cir. 2015), *cert. denied* 136 S. Ct. 447 (2015); *Heller v. District of Columbia*, 670 F.3d 1244, 1261-64 (D.C. Cir. 2011) ("*Heller II*"), or in affirming the denial of a preliminary injunction against their enforcement, *see Fyock v. Sunnyvale*, 779 F.3d 991, 998-1001 (9th Cir. 2015).

2. Although the panel majority did not render an ultimate decision on the constitutionality of Maryland's law, its unprecedented decision, as a practical matter, substantially limits the authority of sovereign States to enact laws to address threats to the safety of their citizenry. If not addressed now, the majority's decision to apply strict scrutiny to a law that presents no meaningful intrusion on the core Second Amendment right identified in *District of Columbia v. Heller*, 554 U.S. 570 (2008), threatens to invalidate, or chill the enactment of, firearms restrictions that are enacted to protect public safety.

3. The validity of Maryland's statute is an issue of exceptional importance. Acting in the wake of a series of public mass shootings perpetrated with assault long guns and large-capacity magazines, including the murder of 26 elementary school students and teachers in Newtown, Connecticut in which the shooter used an AR-15 rifle and large-capacity magazines, the Maryland General Assembly enacted the statute to further the State's "paramount interest in the protection of its citizenry and the public safety." Slip op. at 82 (King, J., dissenting).

**STATEMENT**

This case challenges two aspects of Maryland's Firearm Safety Act of 2013: (1) a prohibition on the possession, purchase, sale, or transfer of specifically-enumerated assault long guns, their copies, and copycat weapons; and (2) a prohibition on the purchase, sale, or transfer within Maryland of detachable firearm

magazines with the capacity to hold more than 10 rounds of ammunition. Md. Code Ann., Crim. Law §§ 4-301, 4-303(a), 4-305.

The central focus of the plaintiffs' claims is the AR-15, a semiautomatic version of the U.S. Army's M16 rifle. The firearm was developed to meet Army specifications calling for a rifle that would fire rounds capable of penetrating both body armor and a steel helmet; hold a detachable 20-round magazine; weigh less than 6 pounds fully loaded; and allow rapid fire of multiple rounds in a controlled, yet spread pattern. Functionally, the M16 differs from the AR-15 in only one respect: in addition to being capable of semiautomatic fire (firing one round of ammunition with each trigger pull), the M16 is also capable of automatic fire (firing multiple rounds of ammunition with each trigger pull). Slip op. at 70 (King, J., dissenting). However, because "semi-automatics still fire almost as rapidly as automatics," *Heller II*, 670 F.3d at 1263, they are "virtually indistinguishable in practical effect," H.R. Rep. 103-489 at 18 (1994). In fact, the United States Army and many law enforcement agencies consider the M16 to be *more* effective in almost all combat situations when it is used in semiautomatic mode – *i.e.*, when it is functionally identical to the AR-15. Slip op. at 70 (King, J., dissenting).

In 1994, Congress concluded that assault weapons, as a net effect of their military combat features, have a "capability for lethality—more wounds, more serious, in more victims—far beyond that of other firearms in general, including

3

other semiautomatic guns." Slip op. at 69 (King, J., dissenting) (quoting H.R. Rep. 103-489, at 18-20). Reflecting this greater danger, both assault weapons and large-capacity magazines are over-represented in public mass shootings and the murder of law enforcement officers. *Id.* at 70. This is significant because public mass shootings that involve assault weapons and large-capacity magazines result, on average, in more fatalities and injuries than those that do not. *Id.*

In upholding Maryland's 2013 law restricting assault long guns and large-capacity magazines, the district court applied this Court's two-pronged test under which a court must consider both whether the law implicates the Second Amendment and whether it meets the applicable level of means-end scrutiny. *Kolbe v. O'Malley*, 42 F. Supp. 3d 768, 783 (D. Md. 2014) (citing *Woollard v. Gallagher*, 712 F.3d 865, 875 (4th Cir. 2013)). Although the district judge expressed doubt that the firearms and magazines at issue were even protected by the Second Amendment, she assumed that they were and moved to the second prong. *Id.* at 788-89. After considering precedent of the Supreme Court and this Court, the district court found that "intermediate scrutiny is appropriate for assessing the constitutionality of Maryland's ban because it does not seriously impact a person's ability to defend himself in the home, the Second Amendment's core protection." *Id.* at 790. The court held that the defendants carried their burden under intermediate scrutiny. *Id.* at 793, 803.

4

A divided panel reversed on the Second Amendment claim.[1] The panel majority first addressed whether the challenged provisions implicate the Second Amendment, asking whether the firearms and magazines at issue are "in common use" for lawful purposes. Slip op. at 16-28. Finding, based on sales figures, that the covered firearms and magazines are commonly owned, *id.* at 20-23, the majority dismissed the evidence that established that assault long guns are almost never used for self-defense, and found that they are commonly possessed for that purpose,[2] *id.* at 25-27. Addressing whether the firearms and magazines at issue are nonetheless excluded from protection as "dangerous and unusual" weapons, the majority held that dangerousness is irrelevant unless a firearm is also "rare." *Id.* at 28-31. Because all firearms are "dangerous," the panel reasoned, the only relevant question is whether the weapons are commonly possessed. *Id.* at 29.

---

[1] The plaintiffs also contended that the same provisions of Maryland law violate their rights to equal protection under the law and due process. The district court rejected those claims as well. *Kolbe*, 42 F. Supp. 3d at 797-803. The panel majority affirmed that part of the judgment. Slip op. at 46-66.

[2] The majority relied on: (1) testimony of two plaintiffs that they want to acquire such firearms for self-defense; (2) a self-serving, non-scientific firearm industry survey in which owners identified self-defense as a reason to own a "modern sporting rifle"; (3) a 1989 Bureau of Alcohol, Tobacco and Firearms report stating that self-defense could be a suitable purpose for semiautomatic rifles; and (4) an expert witness's agreement that it was "reasonable to assume" that self-defense might be a purpose for keeping such a weapon. *See* slip op. at 25-26.

Proceeding to consider the applicable level of scrutiny, the panel majority found that Maryland's law "burdens the availability and use of a class of arms for self-defense in the home, where the protection afforded by the Second Amendment is at its greatest," and that the burden is "substantial[]." *Id*. at 35. The majority asserted that because AR-15s are both popular and prohibited, the law "significantly burdens the exercise of the right to arm oneself at home" for those citizens who choose to protect themselves with AR-15s. *Id.* at 36-39. On that basis, the majority determined that strict scrutiny applies to Maryland's law. *Id.* at 40.

Judge King dissented. Slip op. at 67-82. Observing that the prohibited assault long guns are "exceptionally lethal weapons of war," Judge King doubted whether they are protected at all under the Second Amendment. *Id.* at 67-75. Judge King observed that the majority's focus on current ownership numbers to determine whether firearms were protected is circular, *id.* at 72-73 (citing *Friedman*, 784 F.3d at 409), and that the majority's interpretation of "dangerous and unusual," which focuses only on whether ownership of the firearm is "rare," effectively rendered the "dangerous" component of the test superfluous, *id.* at 73.[3]

---

[3] In addition to these issues, the majority's test is also of dubious historical validity. The earliest formulation of the "historical tradition of prohibiting the carrying of 'dangerous and unusual weapons'" cited in *Heller*, and the only one that predates the ratification of the Second Amendment, is in Blackstone's Commentaries. 554 U.S. at 627. However, undermining the majority's focus on the *Heller* Court's use of the conjunctive "and" in this phrase, slip op. at 31, Blackstone

Although "strongly inclined" to "proclaim that the Second Amendment is not implicated" by Maryland's law at all, Judge King reasoned that doing so was unnecessary because the law satisfies the "highest appropriate level of scrutiny," namely, "intermediate scrutiny." *Id.* at 75. Judge King observed that "not a single court of appeals has ever – until now – deemed strict scrutiny to be applicable" to a similar law, and that application of intermediate scrutiny is both "counselled" by decisions of sister courts and "entirely consistent with binding precedent." *Id.* at 75-76. Agreeing with those other courts that any burden on the Second Amendment is "far from severe," and recognizing "the State's paramount interest in the protection of its citizenry and the public safety," Judge King would have applied intermediate scrutiny and upheld the law. *Id.* at 80-82.

## REASONS FOR GRANTING REHEARING *EN BANC*

**I.    THE PANEL MAJORITY'S DECISION CONFLICTS WITH THE DECISIONS OF ALL OTHER COURTS OF APPEALS TO HAVE REVIEWED THE CONSTITUTIONALITY OF SIMILAR LAWS.**

The panel majority's decision directly conflicts with the authoritative decisions of all four other courts of appeals to have considered a Second Amendment challenge to a state law prohibiting assault long guns and large-capacity magazines. While the panel majority held that Maryland's law was subject to strict scrutiny, slip

---

referred to the crime of carrying "dangerous *or* unusual weapons." 4 Blackstone, Commentaries on the Laws of England 148-149 (1769) (emphasis added).

op. at 40, all four of those courts expressly rejected that standard of review. Based on their review of Supreme Court and circuit precedent, the Second, Ninth, and D.C. Circuits all applied intermediate scrutiny to similar laws. *NYSRPA*, 804 F.3d at 260-61; *Fyock*, 779 F.3d at 998-99; *Heller II*, 670 F.3d at 1261-62. The Seventh Circuit rejected application of strict scrutiny, but did not apply any of the traditional standards of scrutiny. *Friedman*, 784 F.3d at 410.

Each of these courts also reached a different conclusion from that of the panel majority, but consistent with that of the court below, 42 F. Supp. 3d at 790, regarding the degree of burden, if any, that such laws impose on the Second Amendment right. *See NYSRPA*, 804 F.3d at 260 (the burden "is real, but it is not 'severe'"); *Friedman*, 784 F.3d at 411 (unlike a ban on handguns, the ban at issue "leaves residents with many self-defense options"); *Fyock*, 779 F.3d at 999 (no abuse of discretion in finding that any burden on the core Second Amendment right "is not severe"); *Heller II*, 670 F.3d at 1262 ("[W]e are reasonably certain the prohibitions do not impose a substantial burden on [the Second Amendment] right").

Also in direct conflict with the panel majority's decision, the Second, Seventh, and D.C. Circuits all upheld the constitutionality of the prohibitions on assault weapons and large-capacity magazines before them on substantially the same, or lesser, evidence as was presented in this case. *NYSRPA*, 804 F.3d at 261-64; *Friedman*, 784 F.3d at 411-12; *Heller II*, 670 F.3d at 1262-64. The Ninth Circuit

8

affirmed the district court's denial of a motion for preliminary injunction on similar evidence. *Fyock*, 779 F.3d at 1000-01.

The majority opinion acknowledges this conflict with the decisions of the Seventh, Ninth, and D.C. Circuits. Slip op. at 41-45. The majority does not discuss the Second Circuit's decision in *NYSRPA*, 804 F.3d 242, although that decision is cited in the dissent, slip op. at 74, 75, 77, 79, 80.

## II. THE APPLICABLE LEVEL OF SCRUTINY IS A MATTER OF EXCEPTIONAL IMPORTANCE, AND THE MAJORITY ERRED IN APPLYING STRICT SCRUTINY.

Although the panel majority did not render a decision on the constitutionality of Maryland's law, the full Court should review the majority's unprecedented decision now, because the applicable level of scrutiny is itself a question of exceptional importance. The selection of strict scrutiny as the test for evaluating the constitutionality of firearms restrictions like the one at issue here – a test otherwise applicable, for example, to laws that discriminate on the basis of race or that "foreclose[] an entire medium of expression," *see* slip op. at 45 – will likely have far-reaching consequences on the validity of other statutes and may chill the future enactment of legislation intended to protect public safety.

In finding the application of strict scrutiny in this case to be "compelled" by *Heller* and by *McDonald v. City of Chicago*, 561 U.S. 742 (2010), slip op. at 7, the panel majority misreads those decisions as well as this Court's own precedents.

9

*Heller* concerned a District of Columbia law that imposed a "complete prohibition" on handguns. 554 U.S. at 629. Engaging in a textual and historical analysis, the *Heller* Court concluded that "whatever else" the Second Amendment "leaves to future evaluation, it surely elevates above all other interests the right of law-abiding, responsible citizens to use arms in defense of hearth and home." *Id.* at 635. Identifying handguns as the "class" of arms "that is overwhelmingly chosen by American society" for home self-defense, and the "quintessential" self-defense weapon, the Court held that the District could not ban all of them. *Id.* at 628-29.

Here, as justification for adopting strict scrutiny, the panel majority erroneously equated Maryland's far narrower prohibition with the law at issue in *Heller*. In doing so, the panel substantially expanded the core Second Amendment right beyond that recognized by the Supreme Court. The panel majority described Maryland's law as a "wholesale ban on an entire class of common firearms," and thus as similar to "the total handgun ban at issue in *Heller*." Slip op. at 44. To do so, however, the majority had to substantially depart from the way the *Heller* Court used the term "class," narrowly identifying the relevant class as "the AR-15 platform or pattern rifles and its copies or imitations."[4] Slip op. at 36 & n.11. In fact, Maryland's law does not reach the "class" – as the *Heller* Court used that term – of

---

[4] Elsewhere, the panel majority curiously identifies the relevant "class" as *all* semiautomatic rifles, slip op. at 28, 35, even while acknowledging that Maryland does not actually ban *all* semiautomatic rifles, slip op. at 9 n.4.

10

all rifles, nor even the subclass of all semiautomatic rifles, but instead reaches only a particular subset of semiautomatic long guns with military features. Slip op. at 79 (King, J., dissenting); *accord NYSRPA*, 804 F.3d at 260 (assault weapons bans in New York and Connecticut ban "only a limited subset of semiautomatic firearms").

Whereas the *Heller* Court identified all handguns as a "class" of firearms that could not be banned, the panel majority treats as a "class" a small subset of firearms that comprise no more than 3% of the civilian gun stock, held by fewer than 1% of the national population. Slip op. at 70, 79-80 (King, J., dissenting). Moreover, whereas the *Heller* Court treated the broad "class" of all handguns as especially deserving of protection *because* handguns are "overwhelmingly" selected by Americans for self-defense, 554 U.S. at 628, the panel majority treats the much narrower subset of assault long guns as similarly deserving in spite of evidence that they are almost never used for that purpose, slip op. at 71 (King, J., dissenting). This reasoning reflects a dramatic expansion, not a faithful application, of *Heller*.

Although the *Heller* Court declined to speculate about what other conduct might fall *within* the protection of the Second Amendment, 554 U.S. at 628, it observed that "the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose," *id.* at 626. The Court thus rejected the notion that its interpretation of the Second Amendment would lead to a wholesale overturning of laws, instead reassuring that it "should not be thought" that

prior decisions upholding firearms restrictions "would necessarily have come out differently" under *Heller's* interpretation. *Id.* at 624 n.24. The Court also identified a non-exhaustive set of types of laws that it presumed would fall *outside* of Second Amendment protection, *id.* at 626-27 & n.26, acknowledged a "historical tradition of prohibiting the carrying of 'dangerous and unusual weapons,'" *id.* at 627, and assumed, therefore, that "weapons that are most useful in military service – M-16 rifles and the like – may be banned," *id*. Subsequently, in *McDonald v. City of Chicago*, in holding that the Second Amendment right recognized in *Heller* applies to the States through the Fourteenth Amendment, the Court observed that "state and local experimentation with reasonable firearms regulation will continue under the Second Amendment." 561 U.S. at 785 (citation omitted).

The panel majority's selection of strict scrutiny, "the most demanding test known to constitutional law," slip op. at 81 (King, J., dissenting) (quoting *City of Boerne v. Flores*, 521 U.S. 507, 534 (1997)), cannot easily be reconciled with these express assurances in the *Heller* decision. *See Heller*, 554 U.S. at 688 (Breyer, J., dissenting) (stating, without opposition from the majority, that the majority's broad approval of a set of laws as presumptively lawful "implicitly, and appropriately, rejects" the suggestion that strict scrutiny should apply).[5] Far from compelling strict

---

[5] Courts of appeals have nearly universally adopted intermediate scrutiny in reviewing Second Amendment challenges. *See, e.g.*, *Bonidy v. U.S. Postal Serv.*, 790 F.3d 1121, 1126 (10th Cir. 2015) (applying intermediate scrutiny to prohibition

scrutiny, both the reasoning of, and these assurances in, *Heller* strongly suggest that intermediate scrutiny is the "highest appropriate level of scrutiny" that could be applied to Maryland's law. Slip op. at 75 (King, J., dissenting).

As explained by Judge King, the majority also misreads this Court's decisions in *Masciandaro* and *Woollard* to compel application of strict scrutiny. *Id.* at 77-78. Neither of those decisions, both of which applied intermediate scrutiny to the laws under review, "purported to, or had reason to, decide whether strict scrutiny always, or even ever, applies to regulations burdening the right of self-defense in the home." *Id.* at 78.

To state the obvious, the standard of scrutiny matters. In this case, the majority reaches the unprecedented conclusions that a single model of firearm can

---

on carry on postal service property); *Jackson v. City of San Francisco*, 746 F.3d 953, 965 (9th Cir. 2014) (applying intermediate scrutiny to gun storage ordinance); *Woollard*, 712 F.3d at 878-79 (applying intermediate scrutiny to "may issue" handgun wear-and-carry permit law), *cert. denied*, 134 S. Ct. 422 (2013); *Kachalsky v. County of Westchester*, 701 F.3d 81, 96-97 (2d Cir. 2012) (applying intermediate scrutiny to wear-and-carry permit law), *cert. denied*, 133 S. Ct. 1806 (Apr. 15, 2013); *National Rifle Ass'n of Am., Inc. v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 700 F.3d 185, 205 (5th Cir. 2012) (applying intermediate scrutiny to prohibition on sale of firearms to individuals between the ages of 18 and 21), *cert. denied*, 134 S. Ct. 1364 (Feb. 24, 2014); *United States v. Masciandaro*, 638 F.3d 458, 471 (4th Cir. 2011) (applying intermediate scrutiny to regulation of firearms in national park). The sole court of appeals decision adopting a strict scrutiny standard for Second Amendment challenges was subsequently vacated, and is currently pending decision on rehearing *en banc*. *Tyler v. Hillsdale County Sheriff's Dep't*, 775 F.3d 308 (6th Cir. 2014), *reh'g en banc granted* (6th Cir. Apr. 21, 2015).

constitute a "class" that is effectively entitled to the same level of protection as all handguns, and, therefore, that a prohibition on a particularly dangerous subset of firearms with an at-best tenuous connection to self-defense strikes sufficiently close to the core of the Second Amendment to merit strict scrutiny. As lower courts, future panels of this Court, and legislatures grapple with the question of just how much the majority's ruling has expanded the Second Amendment right beyond that identified in *Heller*, the panel's selection of strict scrutiny will naturally loom large. For that reason, regardless of the fate of this particular law under strict scrutiny analysis, it is a matter of exceptional importance for the full Court to review this case now.

### III. THE CONSTITUTIONALITY OF MARYLAND'S FIREARM SAFETY ACT SUBSTANTIALLY AFFECTS PUBLIC SAFETY AND IS THEREFORE A MATTER OF EXCEPTIONAL IMPORTANCE.

The constitutionality of the law under review concerns the State's "paramount interest in the protection of its citizenry and the public safety." Slip op. at 82 (King, J., dissenting). In addition to the evidence before Congress when it enacted its now-expired ban on assault weapons, the summary judgment record contains evidence from experienced law enforcement officials and other expert witnesses, along with empirical data, supporting the judgment of the Maryland legislature, which determined that prohibiting the possession and sale of particularly dangerous firearms and magazines with features designed for military applications, not self-defense, will advance Maryland's interests in protecting its citizens and in reducing

14

the destructive effects of firearm violence. *See, e.g.*, *id.* at 69-71. Simply put, when assault long guns and large-capacity magazines are used instead of other firearms and magazines, they result in more shots fired and more people injured or killed. *Id.* at 70. Indeed, that is the very purpose of their design. *Id.* at 69.

Nothing in *Heller*, *McDonald*, or this Court's decisions engaging in the "'serious business'" of "adjudicating the Second Amendment's breadth," *id.* at 82 (quoting *Masciandaro*, 638 F.3d at 475 (Wilkinson, J., for the Court)), compels, or even permits, the majority's ruling, which threatens to "imped[e] Maryland's and others' reasonable efforts" to combat firearm violence, *id.* at 82.

## CONCLUSION

This Court should grant rehearing *en banc*.

BRIAN E. FROSH
Attorney General of Maryland

s/ Matthew J. Fader
MATTHEW J. FADER
JENNIFER L. KATZ
Assistant Attorneys General
200 St. Paul Place, 20th Floor
Baltimore, Maryland 21202
Tel. 410-576-7906
mfader@oag.state.md.us

February 18, 2016   Attorneys for Appellees

15

# CERTIFICATE OF SERVICE

I certify that, on this 18th day of February 2016, I electronically filed with the Clerk of the Court via the CM/ECF System the foregoing Petition for Rehearing En Banc, which will cause the petition to be delivered electronically to all counsel of record, and that on the 19th day of February, 2016, I will cause two copies of the petition to be sent by first class mail to counsel for the Appellants, as follows:

John Parker Sweeney
T. Sky Woodward
James W. Porter, III
Bradley, Arant Boult Cummings LLP
1615 L Street, NW, Suite 1350
Washington, DC 20036

/s Matthew J. Fader
Matthew J. Fader