No. 14–1945

# In the United States Court of Appeals for the Fourth Circuit

STEPHEN V. KOLBE, *et al.*,
*Plaintiffs-Appellants,*

v.

LAWRENCE J. HOGAN, JR., GOVERNOR, *et al.*,
*Defendants-Appellees.*

On Appeal from the United States District
Court for the District of Maryland

**BRIEF OF *AMICUS CURIAE* EVERYTOWN FOR GUN SAFETY
IN SUPPORT OF APPELLEES AND REHEARING *EN BANC***

J. Adam Skaggs
Mark Anthony Frasetto
EVERYTOWN FOR GUN SAFETY
P.O. Box 4184
New York, NY 10163

Deepak Gupta
Jonathan E. Taylor
Neil K. Sawhney
GUPTA WESSLER PLLC
1735 20th Street
Washington, DC 20009
(202) 888-1742
*deepak@guptawessler.com*

*Counsel for Amicus Curiae
Everytown for Gun Safety*

February 25, 2016

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. __14-1945__   Caption: __Kolbe, et al. v. Hogan, et al.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Everytown for Gun Safety__
(name of party/amicus)

who is _____amicus_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1. Is party/amicus a publicly held corporation or other publicly held entity? ☐YES ☑NO

2. Does party/amicus have any parent corporations? ☐YES ☑NO
   If yes, identify all parent corporations, including all generations of parent corporations:

3. Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity? ☐YES ☑NO
   If yes, identify all such owners:

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))? ☐ YES ☑ NO
If yes, identify entity and nature of interest:

5. Is party a trade association? (amici curiae do not complete this question) ☐ YES ☑ NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6. Does this case arise out of a bankruptcy proceeding? ☐ YES ☑ NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: /s/ Deepak Gupta          Date: February 25, 2016

Counsel for: Everytown for Gun Safety

## CERTIFICATE OF SERVICE
**************************

I certify that on ___February 25, 2016___ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

| /s/ Deepak Gupta | February 25, 2016 |
|---|---|
| (signature) | (date) |

# TABLE OF CONTENTS

Table of authorities ........................................................................................................ii

Introduction and interest of amicus curiae ........................................................................1

Argument........................................................................................................................2

Conclusion......................................................................................................................8

# TABLE OF AUTHORITIES

**Cases**

*District of Columbia v. Heller*,
    554 U.S. 570 (2008) ............................................................................*passim*

*Friedman v. City of Highland Park*,
    784 F.3d 406 (7th Cir. 2015) ................................................................ 2, 3

*Fyock v. Sunnyvale*,
    779 F.3d 991 (9th Cir. 2015) ....................................................................4

*Heller v. Dist. of Columbia*,
    670 F.3d 1244 (D.C. Cir. 2011) ................................................................7

*Tyler v. Hillsdale County Sheriff's Department*,
    775 F.3d 308 (6th Cir. 2014) ....................................................................7

*United States v. Chester*,
    628 F.3d 673 (4th Cir. 2010) ....................................................................4

*United States v. Masciandaro*,
    638 F.3d 458 (4th Cir. 2011) ....................................................................1

*United States v. Skoien*,
    614 F.3d 638 (7th Cir. 2010) ....................................................................4

**Statutes**

1893 Fla. Laws 71, chap. 4147 ........................................................................5

1927 R.I. Pub. Laws 256, §§ 1, 4 ....................................................................5

1931 Cal. Acts 1000 .........................................................................................5

1933 Ohio Laws 189 .......................................................................................5

1940 Minn. Acts 1593 .....................................................................................5

District of Columbia Dangerous Weapons Act,
    47 Stat. 650 (1932), ch. 465, §§ 1, 14 ......................................................6

**Legislative Materials**

H.R. Rep. 103-489 (1994) ...................................................................................................2

S. Rep. No. 575 (1932) ......................................................................................................6

**Books and articles**

Cody J. Jacobs, *End the Popularity Contest*, 84 Tenn. L. Rev. ___ (forthcoming
    2016) ................................................................................................................... 3, 4

*Report of Firearms Committee*, 38th Conference Handbook of the National
    Conference on Uniform State Laws and Proceedings of the Annual Meeting
    (1928) ......................................................................................................................6

# INTRODUCTION AND INTEREST OF *AMICUS CURIAE*

"This is serious business. We do not wish to be even minutely responsible for some unspeakably tragic act of mayhem because in the peace of our judicial chambers we miscalculated as to Second Amendment rights. . . . If ever there was an occasion for restraint, this would seem to be it." – *United States v. Masciandaro*, 638 F.3d 458, 475–76 (4th Cir. 2011) (Wilkinson, J.).

Where Judge Wilkinson counseled restraint, the panel took the opposite path: By a bare majority, it produced an extreme, unprecedented opinion that gravely imperils legislators' ability to adopt laws they deem necessary to protect their constituents. As the nation's largest gun-violence-prevention organization, amicus Everytown for Gun Safety urges this Court to grant rehearing *en banc* and correct the panel's serious errors.

The panel's embrace of strict scrutiny—in conflict with the law of every other circuit—alone makes this case worthy of *en banc* review. Worse, the panel reached that outlier result even though the plaintiffs failed to show that the Constitution confers *any* right to possess military-style assault weapons and high-capacity magazines like those that Maryland's elected representatives have regulated. The panel opinion fashions a dangerous and illogical rule under which these weapons are effectively immune from regulation because they are deemed in "common use"—a rule that cannot be reconciled with either *District of Columbia v. Heller* or the circuits that have addressed the issue. And worse still, despite its obligation to consider history at the threshold, the panel overlooked a century's worth of semiautomatic-weapon regulations that even the National Rifle Association endorsed.

1

## ARGUMENT

**1.** The panel's insistence on strict scrutiny—in square conflict with every other circuit to address a firearms law—flows from two fundamental flaws in the panel's analysis of the Second Amendment's scope.

**a.** *Common Use.* The panel erred first by embracing an illogical theory of "common use" that cannot be reconciled with *Heller* or the uniform precedent of the circuits. The Second Amendment does not guarantee "a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Heller*, 554 U.S. 570, 626 (2008). In particular, it does not protect the highly dangerous "weapons that are most useful in military service—M–16 rifles and the like—[which] may be banned." *Id.* at 627. Yet the panel somehow held it "beyond dispute" that the Constitution guarantees access to weapons that are, in the judgment of Maryland legislators as well as Congress, "virtually indistinguishable in practical effect" from those *Heller* found unprotected by the Second Amendment. Op. 21; H.R. Rep. 103-489 at 18 (1994). It based this erroneous conclusion on the idea that the assault weapons that Maryland restricts are "commonly possessed by law-abiding citizens for self-defense and other lawful purposes," whereas the M–16 is not commonly used because the federal government effectively prohibited it in 1986. Op. 38.

But "relying on how common a weapon is at the time of litigation [is] circular." Op. 72 (King, J. dissenting) (quoting *Friedman v. City of Highland Park*, 784 F.3d 406, 409 (7th Cir. 2015)). As Judge Easterbrook pointed out in upholding a similar law, "it

would be absurd to say that the reason why a particular weapon can be banned is that there is a statute banning it, so that it isn't commonly owned. A law's existence can't be the source of its own constitutional validity." *Id.* If the panel's decision were allowed to stand, it would not only open up a stark conflict with the Seventh Circuit but would establish this absurdity as the law of this Circuit.

What's more, the panel's reasoning fails even on its own terms. The panel claims (at 38) that, like handguns, assault weapons are "commonly possessed by law-abiding citizens for self-defense," which *Heller* holds is the core of the right. But how can that be true when "[t]here is no known incident of anyone in Maryland using an assault weapon for self-defense"? Op. 71 (King, J., dissenting). And it is unclear what "common use" means anyway. *See generally* Cody J. Jacobs, *End the Popularity Contest*, 84 Tenn. L. Rev. ___ (forthcoming 2016), *at* http://bit.ly/1gVsyGZ. Assault weapons "constitute no more than 3% of the civilian gun stock, and ownership of such weapons is concentrated in less than 1% of the U.S. population." Op. 70 (King, J., dissenting). That is a far cry from the absolute handgun ban at issue in *Heller*.

The panel, however, ignored these numbers and instead focused on total sales and manufacturing figures. *See* Op. 20–22. That newly minted test both underprotects and overprotects the Second Amendment right: It underprotects by "creat[ing] an incentive for governments that are interested in restricting access to firearms to ban new weapons completely before they can become popular," even if those weapons would be "very effective for self-defense." Jacobs, *End the Popularity Contest*, at 34. At

3

the same time, it overprotects the right by giving the firearms industry "the ability to unilaterally make new [highly dangerous] firearms protected simply by manufacturing and heavily marketing them," thereby "putting a great deal of power"—constitutional power—"into the hands of gun manufacturers." *Id.* at 33, 36. That is no way to interpret a constitutional right, and this Court should grant rehearing and say so.

**b.** *History.* Compounding its threshold errors, the panel also failed to assess the "historical understanding of the scope of the right." *Heller*, 554 U.S. at 625. As this Court has observed, heightened scrutiny applies only "[i]f the challenged regulation burdens conduct that was within the scope of the Second Amendment as historically understood." *United States v. Chester*, 628 F.3d 673, 680 (4th Cir. 2010). "Longstanding" regulations thus fall outside the scope of the right; they are treated as tradition-based "exceptions" by virtue of their "historical justifications." *Heller*, 554 U.S. at 627, 635. But a regulation need not "mirror limits that were on the books in 1791" to be longstanding under *Heller. United States v. Skoien*, 614 F.3d 638, 641 (7th Cir. 2010). To the contrary, even "early twentieth century regulations" (like those *Heller* identified) may qualify as longstanding. *Fyock v. Sunnyvale*, 779 F.3d 991, 997 (9th Cir. 2015).

The panel did not conduct the requisite historical analysis. Instead, it stated that "nothing in the record demonstrat[es] that law-abiding citizens have been historically prohibited from possessing semi-automatic rifles and LCMs." Op. 28. But, as we now show, there is in fact a century-old line of semiautomatic-weapon regulations—some

4

of which were even more restrictive than Maryland's law. That law is thus consistent with our "historical tradition," and constitutional under *Heller*. 554 U.S. at 627.

States have instituted various restrictions on semiautomatic rifles since they were first developed at the turn of the twentieth century, often regulating them—along with fully automatic weapons—as "machine guns." Some of these restrictions were in essence total prohibitions, and hence broader than Maryland's law, which "reaches only a particular subset of semiautomatic long guns with military features." Pet. 11. A 1927 Rhode Island law, for instance, prohibited the "manufacture, s[ale], purchase or possess[ion]" of a "machine gun," defined as "any weapon which shoots more than twelve shots semi-automatically without reloading." 1927 R.I. Pub. Laws 256, §§ 1, 4. Likewise, in 1933, California made it a felony to "possess[] . . . any firearms of the kind commonly known as a machine gun," defined as any firearm "which [is] automatically fed after each discharge." 1931 Cal. Acts 1000. And, several years later, Minnesota did the same. 1940 Minn. Acts 1593 (prohibiting possession of "a machine gun," including "any firearm capable of automatically reloading after each shot is fired, whether firing singly by separate trigger pressure or firing continuously").[1]

---

[1] Other states subjected semiautomatic weapons to much stricter regulation than other firearms. Ohio, for example, made it a felony to "possess" any "semi-automatic[]" firearm without a permit, which required the applicant to deposit a $5,000 bond. 1933 Ohio Laws 189; *see also* 1893 Fla. Laws 71, chap. 4147 (making it a crime "to carry or own a Winchester or other repeating rifle" that could fire multiple rounds without reloading, absent a license and a $100 bond).

5

Around the same time, Congress enacted a law "[t]o control the possession, sale, transfer, and use of pistols and other dangerous weapons in the District of Columbia," making it a crime (punishable by up to a year in jail) to "possess any machine gun," defined as "any firearm which shoots . . . semiautomatically more than twelve shots without loading." 47 Stat. 650 (1932), ch. 465, §§ 1, 14. Notably, the National Rifle Association "urged" enactment of this law, writing to the bill's sponsor:

> It is our earnest hope that your committee will speedily report the bill favorably to the Senate as it is our desire this legislation be enacted for the District of Columbia, in which case it can then be used as a guide throughout the States of the Union, some seven or eight of which have already enacted similar legislation.

S. Rep. No. 575, at 4–6 (1932). The NRA's endorsement of this prohibition was emblematic of a wider consensus on prohibiting certain semiautomatic weapons. Both the 1927 National Crime Commission Firearm Act and the 1928 Uniform Firearms Act, for example, criminalized the possession of "any firearm which shoots more than twelve shots semi-automatically without reloading." *Report of Firearms Committee*, 38th Conference Handbook of the National Conference on Uniform State Laws and Proceedings of the Annual Meeting 422–23 (1928).

This history demonstrates that the regulation and prohibition of semiautomatic rifles is "longstanding" under *Heller*. 554 U.S. at 605. And, like the early twentieth century regulations that *Heller* deemed longstanding—*e.g.*, "prohibitions on possession of firearms by felons and the mentally ill" and "laws imposing conditions and qualifications on the commercial sale of arms"—Maryland's more limited prohibition

6

is "presumptively lawful." *Id.* at 626–27 n.26. It thus does not burden a "right secured by the Second Amendment." *Id.* at 626. For this reason, too, rehearing is warranted.

**2.** After wrongly holding that the Constitution protects assault weapons, the panel made matters worse by embracing strict scrutiny, concluding (at 36) that the law "substantially burden[s] the core Second Amendment right" (even though there is no evidence that anyone in Maryland has *ever* used an assault weapon for self-defense).

That puts this Circuit at odds with every other circuit to consider similar laws.[2] *See* Pet. 1. The other circuits uniformly reject strict scrutiny for good reason: These laws "do not impose a substantial burden" because "the prohibition of semi-automatic rifles and large-capacity magazines does not effectively disarm individuals or substantially affect their ability to defend themselves." *Heller v. Dist. of Columbia*, 670 F.3d 1244, 1262 (D.C. Cir. 2011) ("*Heller II*").

This Court should step in to correct the panel's dangerous departure from the consensus view of the other circuits. In just the past two weeks, the panel's opinion has already had a serious impact on litigation nationwide. To take just a few examples:

- Advocates have seized on the newly created circuit conflict in a petition for certiorari in the Supreme Court, discussing at length the panel's "self-conscious[] split with the approaches taken by" the other federal circuits,

---

[2] Indeed, "not a single court of appeals has ever" applied strict scrutiny to *any* firearm regulation. Op. 75 (King, J., dissenting). When a divided Sixth Circuit panel applied strict scrutiny in a narrow as-applied challenge, the full court promptly vacated the decision to rehear the case *en banc. See Tyler v. Hillsdale Cnty. Sheriff's Dep't*, 775 F.3d 308, 328–29 (6th Cir. 2014), *reh'g granted*, No. 13-1876 (6th Cir. Apr. 21, 2015).

7

noting that "the Fourth Circuit charted a completely different course." Pet. for Cert. 16–17, *Shew v. Malloy*, (No. 15-1030) (filed Feb. 11, 2016).

- Plaintiffs challenging the federal law regulating automatic weapons have filed a letter in the Fifth Circuit arguing that "strict scrutiny should apply" under *Kolbe*. Doc. No. 00513373452, *Hollis v. Lynch*, No. 15-10803 (Feb. 8, 2016).

- Plaintiffs challenging Colorado's law regulating large-capacity-magazines have argued that, under *Kolbe*, "strict scrutiny is required for a statute banning magazines holding more than 10 rounds." Doc. No. 1019567532, *Colo. Outfitters v. Hickenlooper*, No 14-1290 (10th Cir. Feb. 8, 2016).

Particularly given the Supreme Court's current lack of a full complement of Justices, this Court should take seriously the imperative for national uniformity on this critical constitutional issue. Absent correction, the panel majority's decision will not only impair Maryland's ability "to protect public safety and to reduce the destructive effects of firearm violence," Pet. 1, but also undermine other states' and cities' ability to regulate "exceptionally lethal weapons of war," Op. 68 (King, J., dissenting).

**CONCLUSION**

The Court should grant Maryland's petition for rehearing *en banc*.

Respectfully submitted,

*/s/ Deepak Gupta*
Deepak Gupta
Jonathan E. Taylor
Neil K. Sawhney
GUPTA WESSLER PLLC
1735 20th Street
Washington, DC 20009
(202) 888-1742
*deepak@guptawessler.com*

J. Adam Skaggs

Mark Anthony Frasetto
EVERYTOWN FOR GUN SAFETY
P.O. Box 4184
New York, NY 10163

*Counsel for Amicus Curiae
Everytown for Gun Safety*

February 25, 2016

# CERTIFICATE OF COMPLIANCE

A petition for rehearing is limited to 15 pages. Fed. R. App. P. 40(b). The Federal Rules of Appellate Procedure do not contain a word limit for amicus briefs in support of a petition for rehearing. Generally, amicus briefs may not exceed one-half the size of a principal brief. *See* Fed. R. App. P. 29(d). Applying the same one-half ratio to this brief results in a seven-and-one-half page limit. This brief meets that limit. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in proportionally spaced typeface using Microsoft Word 2010 in 14 point Garamond font.

/s/ Deepak Gupta
Deepak Gupta
*Counsel for Amicus Curiae*
*Everytown for Gun Safety*

February 25, 2016

# CERTIFICATE OF SERVICE

I certify that on February 25, 2016, the foregoing brief was served on all parties or their counsel of record through the CM/ECF system.

/s/ Deepak Gupta
Deepak Gupta