No. 14-1945

# In the
# United States Court of Appeals for the Fourth Circuit

**STEPHEN KOLBE, *et al.*,**
Plaintiffs-Appellants

v.

**LAWRENCE J. HOGAN, JR., GOVERNOR, *et al.*,**
Defendants-Appellees

On Appeal from the United States District Court
for the District of Maryland
No. 1:13-cv-02841-CCB (Hon. Catherine C. Blake)

**OPPOSITION TO PETITION FOR REHEARING *EN BANC***

John Parker Sweeney
T. Sky Woodward
James W. Porter, III
Marc A. Nardone
BRADLEY ARANT BOULT CUMMINGS LLP
1615 L Street N.W., Suite 1350
Washington, D.C. 20036
P (202) 719-8216
F (202) 719-8316
JSweeney@babc.com

Attorneys for Appellants

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. ii

STATEMENT OF THE CASE .............................................................................. 1

REASONS *EN BANC* REVIEW IS NOT WARRANTED ....................................... 7

    I.    THE PANEL DECISION IS FULLY CONSISTENT WITH THIS COURT'S SECOND AMENDMENT JURISPRUDENCE. ............................................. 8

    II.    THIS PETITION DOES NOT INVOLVE A "QUESTION OF EXCEPTIONAL IMPORTANCE" BECAUSE IT INVOLVES ONLY THE APPLICATION OF SETTLED LAW TO THE PARTICULAR FACTS OF THIS CASE. ................... 11

    III.    *EN BANC* REVIEW IS PREMATURE. ....................................................... 13

CONCLUSION ................................................................................................. 14

CERTIFICATE OF SERVICE ............................................................................. 16

# TABLE OF AUTHORITIES

Cases

*Arnold v. Eastern Air Lines*,
   712 F.2d 899 (4th Cir. 1983) (*en banc*)...............................................................12

*Bateman v. Perdue*,
   881 F. Supp. 2d 709 (E.D.N.C. 2012) ...............................................................10

*Kolbe v. O'Malley*,
   42 F. Supp. 3d 768 (D. Md. 2014) ...................................................................1, 2

*McCullen v. Coakley*,
   134 S. Ct. 2515 ....................................................................................................13

*United States v. Carter*,
   669 F.3d 411 (4th Cir. 2012) ................................................................................9

*United States v. Chester*,
   628 F.3d 673 (4th Cir. 2010) ............................................................................6, 8

*United States v. Masciandaro*,
   638 F.3d 458 (4th Cir. 2011) ............................................................... 6, 8, 9, 11

*United States v. Miller*,
   307 U.S. 174 (1939) .............................................................................................3

*United States v. Robinson*, __ F.3d __, Case No. 14-4902, 2016 U.S. App. LEXIS
   3122 (4th Cir. Feb. 23, 2016) ...............................................................................5

*Woollard v. Gallagher*,
   712 F.3d 865 (4th Cir. 2013) ................................................................................9

**Other Authorities**

Fed. R. App. P. 35 ........................................................................................................6

Fed. R. App. P. 35(a) ...................................................................................................6

**STATEMENT OF THE CASE**

This case involves the application of established Fourth Circuit Second Amendment precedent to Maryland laws that effectively prohibit the acquisition and possession – in the home – of firearms that are commonly possessed by law-abiding citizens for lawful purposes. Specifically, Maryland has prohibited the possession, purchase, sale, or transfer of "the vast majority of semi-automatic rifles commonly kept by several million American citizens for defending their families and homes," Slip Op. at 6, as well as the purchase or transfer within Maryland of certain standard-capacity ammunition magazines.

Appellants brought suit in the District Court, contending that certain provisions of the Maryland Firearm Safety Act of 2013 violate the Second Amendment. *Kolbe v. O'Malley*, 42 F. Supp. 3d 768, 776-77 (D. Md. 2014). The District Court held that the challenged laws "remove a class of weapons that the plaintiffs desire to use for self-defense," *id.* at 790, and that the laws burdened the core right of self-defense in the home, *id.* at 790-91, but applied intermediate scrutiny because it did not think that the burden – a complete possessory prohibition of a class of firearms – was significant. *Id.* at 790. The District Court, applying intermediate scrutiny, ultimately held that the State was able to "demonstrate a reasonable fit between the [challenged laws] and the government's substantial

1

interests in protecting public safety and reducing the negative effects of firearm-related crime." *Id.* at 797.

On appeal, a panel of this Court (Judge King, dissenting) vacated the judgment of the District Court and remanded for that court to apply strict scrutiny as mandated by this Court's previous decisions.

The panel undertook the familiar two-step analysis adopted by this Court and other Circuit Courts in cases involving Second Amendment challenges. Slip Op. at 15-16. The panel began this analysis by examining whether the conduct affected by the challenged laws was historically understood to be protected by the Second Amendment. Slip Op. at 16-17. Holding that the conduct being regulated in this case was "an individual's possession of a firearm in the home for self-defense," *id*. at 17, the panel concluded that the Supreme Court already had conducted the necessary historical analysis and had held this conduct to be protected under the Second Amendment in *District of Columbia v. Heller*, 554 U.S. 570 (2008). Slip Op. at 17. The panel then affirmed the District Court's holding (consistent too with the Supreme Court's holding in *Staples v. United States*, 511 U.S. 600, 611-12 (1994)) that the laws at issue "relate[] to a particular class of weapons," *id.* at 18, and evaluated whether that class of firearms fell within the protections of the Second Amendment. *Id.* at 18-32.

The panel applied the Supreme Court's criteria from *Heller* and *United States v. Miller*, 307 U.S. 174 (1939), to determine whether the firearms and magazines at issue are within the protections of the Second Amendment, examining whether they are commonly used by law-abiding citizens for lawful purposes. Slip Op. at 19-28. Rejecting the State's argument that the prohibited firearms were not "commonly possessed," the panel had "little difficulty in concluding that the banned semi-automatic rifles are <u>in common use</u> by law-abiding citizens." *Id*. at 20 (emphasis in original). The panel based this holding on the facts that more than 8 million of the prohibited firearms were imported or manufactured between 1990 and 2012 and that these firearms accounted for twenty percent of all retail firearms sales in 2012. *Id.* at 21.[1] With respect to the prohibited magazines, the panel held that they "are commonly kept by American citizens," and "are so common that they are standard." *Id.* at 22. The panel also rejected the State's argument that magazines are not "arms" within the meaning of the Second Amendment, holding: "[t]o the extent that firearms equipped with detachable magazines are commonly possessed by law-abiding

---

[1] With respect to the commonality of the firearms at issue in this case, the panel put the raw numbers in perspective by explaining that "in 2012, the number of AR- and AK-style weapons manufactured and imported into the United States was more than double the number of Ford F-150 trucks sold, the most commonly sold vehicle in the United States." Slip Op. at 22.

3

citizens for lawful purposes, there must also be an ancillary right to possess the magazines necessary to render those firearms operable." *Id.* at 24

With respect to "lawful purposes," the panel relied upon the testimony of the individual Appellants, ATF reports, and even the testimony of the State's expert witness, Daniel Webster, that self-defense in the home is a purpose of owning the firearms and magazines prohibited by the challenged laws. *Id.* at 25-26. The panel rejected the State's argument that Appellants were required to provide evidence of actual self-defense use, calling this argument "a hyper-technical, out-of-context parsing of the Supreme Court's statement in *Heller*." Slip Op. at 26.

The panel also rejected the State's novel "unusually dangerous" test, *id.* at 29-32, explaining that the focus in determining whether firearms are protected by the Second Amendment is whether they are "<u>typically</u> or <u>commonly</u> possessed, not whether they [have] reached or exceeded some undefined level of dangerousness." *Id*. at 29 (emphasis in original). The panel further noted that the Supreme Court referred to firearms that were unprotected by the Second Amendment as "'dangerous' <u>and</u> 'unusual' conjunctively, suggesting that even a dangerous weapon may enjoy constitutional protection if it is widely employed for lawful purposes, i.e., not unusual." *Id.* at 31 (emphasis in original).[2] The panel ultimately held that the

---

[2] The State implies in its Petition that the panel was incorrect to rely upon the Supreme Court's holding in *Heller* employing the conjunctive use of "dangerous and unusual," relying upon a different version of Blackstone's Commentaries on the

4

firearms and magazines at issue are protected by the Second Amendment. Slip Op. at 32.

Having held that the firearms and magazines at issue in this case are protected by the Second Amendment, the panel proceeded to determine whether the District Court applied the correct level of scrutiny. *Id.* at 33. First, the panel reiterated that the challenged laws prohibit "the availability and use of a class of arms for self-defense in the home." *Id.* at 35. Then, the panel held that the burden imposed by these laws is substantial because they impose "a complete ban on the possession by law-abiding citizens of . . . the most popular class of centerfire semi-automatic rifles in the United States." *Id.* at 36. More fundamentally, the panel held that, because the firearms and magazines prohibited by Maryland are protected under the Second Amendment, a ban on their possession in the home, applicable to all law-abiding citizens, is a substantial burden on the exercise of Second Amendment rights. *Id.* The panel likened Maryland's ban to "a law that foreclose[s] an entire medium of expression" and noted that "[s]uch laws receive exceptionally rigorous review in the

---

Laws of England than that used in *Heller*. Petition at 6-7 n.3. The State's argument is wholly irrelevant as the Supreme Court's holdings guide this Court's decisions, not alternate versions of sources cited by that Court. Furthermore, as this Court has recently noted, when the Supreme Court issues a conjunctive test, each element represents a "separate and independent condition[]" of that test that must be satisfied. *United States v. Robinson*, __ F.3d __, Case No. 14-4902, 2016 U.S. App. LEXIS 3122 at *10 n.2 (4th Cir. Feb. 23, 2016).

analogous context of the First Amendment . . . and [it] [saw] no reason for a different method here." Slip Op. at 45 (internal quotation marks and citations omitted).

The panel ultimately held that this Court's prior decisions in *United States v. Chester*, 628 F.3d 673 (4th Cir. 2010), *United States v. Masciandaro*, 638 F.3d 458 (4th Cir. 2011), and *Woollard v. Gallagher*, 712 F.3d 865 (4th Cir. 2013), compelled the application of strict scrutiny in the instant case, because the prohibitions significantly burden the exercise of the right of law-abiding citizens to arm themselves in their homes. Slip Op. at 40, 45.[3] The panel vacated the decision of the District Court and remanded the case for that court to apply strict scrutiny, emphasizing that it was not rendering a judgment that the challenged laws are unconstitutional. *Id.* at 45-46.

---

[3] The State's reliance upon the fact that the panel decision does not comport with the decisions of other Circuit Courts considering similar issues is misplaced. Most importantly, no other Circuit has developed a body of Second Amendment law mandating strict scrutiny for challenges to governmental restrictions impacting law-abiding, responsible citizens within their homes. Moreover, none of the arguments being advanced by the State as to why the banned firearms and magazines are not protected by the Second Amendment – the banned firearms are uncommon and not actually used in self-defense, the banned magazines are not "arms," and the banned firearms and magazines are "unusually dangerous" – have been accepted by any Circuit Court cited by the State as creating a conflict. The panel also thoroughly explained (Slip Op. at 41-45) why it declined to follow the decisions of other Circuit Courts that applied intermediate scrutiny to similar prohibitions, explaining that they were "without persuasive reasoning and simply incorrect." Slip Op. at 44.

**REASONS *EN BANC* REVIEW IS NOT WARRANTED**

Federal Rule of Appellate Procedure 35 cautions that *en banc* rehearing is not favored and that it will not be granted unless "en banc consideration is necessary to secure or maintain uniformity of the court's decisions" or "the proceeding involves a question of exceptional importance." Fed. R. App. P. 35(a). This case, in its current procedural posture, does not meet either of these criteria.

As the panel majority correctly held, this Court's prior decisions in *Chester, Masciandaro*, and *Woollard* compel the application of strict scrutiny to laws that burden the ability of law-abiding, responsible citizens from possessing protected arms within their homes. Thus, the panel's decision in this case is in harmony with this Court's Second Amendment jurisprudence, and there is no lack of uniformity within this Court's decisions.[4] Moreover, even though this case involves Appellants' fundamental Second Amendment rights, it does not yet present a "question of exceptional importance" because the panel decision only involves the application of settled Circuit law on the level of scrutiny under the particular facts of this case. Finally, *en banc* review would be premature at this time because no court has yet

---

[4] Given this Court's post-*Heller* holdings on the Second Amendment, any holding by the panel in this case *except* that strict scrutiny is appropriate would have created the *intra*-Circuit conflict that is referenced in Rule 35 as warranting *en banc* review.

applied the proper standard to render a judgment as to the constitutionality of the challenged statutes.

I. **THE PANEL DECISION IS FULLY CONSISTENT WITH THIS COURT'S SECOND AMENDMENT JURISPRUDENCE.**

As the panel noted, this Court has developed a robust Second Amendment jurisprudence. This Court's first foray into the post-*Heller* Second Amendment landscape came in *United States v. Chester*, 628 F.3d 673 (4th Cir. 2010). There, this Court applied intermediate scrutiny to Chester's challenge because Chester was not a law-abiding, responsible citizen: "[W]e believe [Chester's] claim is not within the core right identified in *Heller* – the right of a *law-abiding, responsible* citizen to possess and carry a weapon for self-defense – by virtue of Chester's criminal history as a domestic violence misdemeanant." *Id*. at 683 (emphasis in original). The Court also indicated that, had Chester been a law-abiding, responsible citizen, it would have applied strict scrutiny to restrictions that reach into the home. *Id*. ("Accordingly, we conclude that intermediate scrutiny is more appropriate than strict scrutiny for Chester and similarly situated persons.").

In *United States v. Masciandaro*, 638 F.3d 458 (4th Cir. 2011), this Court considered a Second Amendment challenge brought by a law-abiding citizen to a law criminalizing his possession of a firearm in a federal park. While Masciandaro was a law-abiding citizen at the time of his arrest, the law he challenged applied to public spaces, not the home. *Id*. at 470. Thus, this Court held that intermediate

scrutiny was applicable, stating, "as we move outside the home, firearm rights have always been more limited, because public safety interests often outweigh individual interests in self-defense." *Id*. The Court confirmed, however, that "any law that would burden the 'fundamental,' core right of self-defense in the home by a law-abiding citizen would be subject to strict scrutiny." *Id*. at 470.

A year later, this Court confirmed that this Circuit's Second Amendment jurisprudence mandates strict scrutiny as the appropriate level of review for laws that impact the right of law-abiding citizens to possess arms within their homes. *United States v. Carter*, 669 F.3d 411, 416 (4th Cir. 2012) ("[W]e have noted that the application of strict scrutiny is important to protect the core right of self-defense identified in *Heller*[.]").

*Woollard v. Gallagher*, 712 F.3d 865 (4th Cir. 2013), continued this Court's unbroken line of decisions teaching that strict scrutiny is applicable to laws that impact law-abiding, responsible citizens in their homes. In that case, this Court declined to apply strict scrutiny to a law that required citizens seeking a permit to carry a concealed firearm to demonstrate "good cause." *Id*. at 878. This Court explained that applying strict scrutiny to a law that regulated public carry permits would "place the right to arm oneself in public on equal footing with the right to arm oneself at home, *necessitating* that we apply strict scrutiny[.]" *Id*. (emphasis added).

This Court has clearly and consistently held that, while intermediate scrutiny is appropriate for analyzing laws that impact citizens who are not law-abiding or responsible, or laws that apply outside the home, strict scrutiny must be applied to laws that impact law-abiding, responsible citizens in the home. The panel was faithful to this Court's prior decisions and the distinctions drawn therein, Slip Op. at 40, in holding that strict scrutiny must apply in this case.[5]

The clarity of this Court's prior holdings is further demonstrated by the fact that a district court within this Circuit already has declared a statute unconstitutional under the Second Amendment, applying essentially the same analysis as the panel in this case. In *Bateman v. Perdue*, 881 F. Supp. 2d 709 (E.D.N.C. 2012), the United States District Court for the Eastern District of North Carolina considered a challenge to North Carolina laws that suspended the right of law-abiding citizens to acquire firearms for use in the home during a declared state of emergency. *Id.* at 710. The court recognized that this Court's decisions require that "a law that burdens the 'fundamental' or 'core' Second Amendment right – a law abiding citizen's right to self-defense in the home – [be] subject to strict scrutiny." *Id.* at 715 (citing

---

[5] The panel's application of strict scrutiny was not only compelled by the Fourth Circuit's post-*Heller* precedent, but also is manifestly logical. As this Court has either tacitly or expressly acknowledged in *Chester*, *Masciandaro*, *Carter*, and *Woollard*, it would be fundamentally unfair to provide the same level of constitutional protection to responsible, law-abiding persons in their own homes as you would for criminals.

*Masciandaro*, 538 F.3d at 407). The court declared, however, that "a law that burdens only the right to keep and bear arms outside of the home will survive constitutional challenge upon a lesser showing by the government." *Id.* at 716.

Thus, the challenged panel decision does not break from this Court's prior decisions. Rather, the panel's application of Second Amendment jurisprudence in this Circuit is the only interpretation that could be consistent with this Court's prior holdings. Because the panel's decision is consistent with existing Circuit precedent, *en banc* review is not appropriate.[6]

**II. THIS PETITION DOES NOT INVOLVE A "QUESTION OF EXCEPTIONAL IMPORTANCE" BECAUSE IT INVOLVES ONLY THE APPLICATION OF SETTLED LAW TO THE PARTICULAR FACTS OF THIS CASE.**

There is no doubt that Appellants' fundamental rights at issue in this case are important. At this stage of the proceedings, however, this case does not present a "question of exceptional importance," as that phrase is used in Rule 35, such that *en banc* review is appropriate.

As explained above, this Court has previously established, in *Chester*, *Masciandaro*, *Carter*, and *Woollard*, that strict scrutiny must apply in a case such as

---

[6] Appellants would also note that the State has never argued – in the District Court, before the panel, or in its Petition – that this Court should overrule any prior decisions mandating that strict scrutiny should apply to laws implicating the "core" of the Second Amendment. Any potential argument that *en banc* review is appropriate to consider overturning prior decisions has been waived by the State.

this. Therefore, this case does not present a novel issue of law or even an issue of the extension of existing law into uncharted waters. The panel simply reviewed the District Court's application of the existing law, concluded that its application was incorrect, and remanded the case for the District Court to apply the correct law. Panels of this Court conduct such reviews many times each term without requiring *en banc* review.

The State's disappointment with the panel's decision on this one issue is not a reason to grant *en banc* review, yet the State argues little more than that the panel simply got it wrong. As Judge Phillips noted, however, over thirty years ago, "a judge should not cast a vote for reconsideration by the entire court merely because he disagrees with the result reached by the panel . . . Rule 35 was not adopted to provide that luxury." *Arnold v. Eastern Air Lines*, 712 F.2d 899, 915 (4th Cir. 1983) (*en banc*) (Phillips, J., dissenting and dissenting from the grant of rehearing *en banc*). The State's Petition cannot support *en banc* review.

It is not surprising that the State is unable to articulate any basis for its assertion that this case presents an issue of exceptional importance other than the fact that it is dissatisfied with the panel's decision. The panel did not grapple with a novel issue or attempt to define a previously unexplored area of the law. Its routine, error-correcting opinion did not address a question of exceptional importance

because this Court previously, and clearly, had dictated the result in this appeal before this case was even filed. As such, *en banc* review is not warranted.

### III. *EN BANC* REVIEW IS PREMATURE.

If this Court is considering granting *en banc* review because this case involves a question of the constitutionality of a state law, such review would be premature at this stage of the litigation.

While the panel did correct the District Court's erroneous conclusion that intermediate scrutiny was appropriate and affirmed that strict scrutiny must apply in this case, the panel did not apply strict scrutiny or even comment on the ultimate validity of the statutes being challenged in this case. Rather, the panel went to great lengths to disavow any such action: "[t]his is not a finding that Maryland's law is unconstitutional. It is simply a ruling that the test of its constitutionality is different from that used by the district court." Slip Op. at 46.[7] Accordingly, the panel vacated the decision of the District Court and remanded the case to afford the District Court an opportunity to evaluate the challenged laws under the proper standard.

---

[7] Importantly, while this issue was not reached by the panel, it is clear that the challenged statutes would also fail the correct application of intermediate scrutiny as formulated by the Supreme Court. *See McCullen v. Coakley*, 134 S. Ct. 2515, 2534 (requiring, under intermediate scrutiny, that a law impacting fundamental liberties be narrowly tailored). The bans at issue in this case could never satisfy the tailoring requirements under either strict or intermediate scrutiny. Appellants would prevail under either standard, underscoring that the Petition does not present a "question of exceptional importance."

13

At this point, there has been no ruling on the constitutionality of the statutes being challenged, and *en banc* review would be premature. The panel remanded this case for the District Court to apply strict scrutiny. Any further review by this Court should wait until after the District Court has had an opportunity to apply strict scrutiny to the facts of the case and any appeal is taken to this Court.

**CONCLUSION**

The State asks this Court to engage in *en banc* review without tying its arguments to the governing procedural rules that make clear such review is not warranted. The Petition does not present a question of exceptional importance because the panel decision does not conflict with any prior decisions of this Court, but merely applies those prior decisions to the particular facts of this case. Moreover, *en banc* review would be premature at this point because no court has applied the proper standard and actually rendered a judgment on the constitutionality of the challenged statutes. For the foregoing reasons, Appellants request that this Court deny rehearing *en banc*.

Respectfully submitted,

/s/ John Parker Sweeney
John Parker Sweeney
T. Sky Woodward
James W. Porter, III
Marc A. Nardone
Bradley Arant Boult Cummings LLP
1516 L Street, NW, Suite 1350
Washington, DC 20036
(202) 393-7150
jsweeney@babc.com

*Attorneys for Appellants*

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 29th day of February, 2016, Appellants' Opposition to Petition for Rehearing *En Banc* was served, via electronic delivery to all parties' counsel via the Court's appellate CM/ECF system which will forward copies to Counsel of Record.

*/s/ John Parker Sweeney*
John Parker Sweeney
