No. 14-1945

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

STEPHEN V. KOLBE; ANDREW C. TURNER; WINK'S SPORTING GOODS, INC.; ATLANTIC GUNS, INC.; ASSOCIATED GUN CLUBS OF BALTIMORE INC.; MARYLAND SHALL ISSUE, INC.; MARYLAND STATE RIFLE AND PISTOL ASSOCIATION, INC.; NATIONAL SHOOTING SPORTS FOUNDATION, INC.; MARYLAND LICENSED FIREARMS DEALERS ASSOCIATION, INC.,

*Plaintiffs-Appellants*,

v.

LAWRENCE J. HOGAN, JR., IN HIS OFFICIAL CAPACITY AS GOVERNOR OF THE STATE OF MARYLAND; BRIAN E. FROSH, IN HIS OFFICIAL CAPACITY AS ATTORNEY GENERAL OF THE STATE OF MARYLAND; COLONEL WILLIAM M. PALLOZZI, IN HIS OFFICIAL CAPACITY AS SECRETARY OF THE DEPARTMENT OF STATE POLICE AND SUPERINTENDENT OF THE MARYLAND STATE POLICE; MARYLAND STATE POLICE,

*Defendants-Appellees*.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND; ON REHEARING EN BANC

**SUPPLEMENTAL BRIEF OF *AMICI CURIAE* THE STATE OF WEST VIRGINIA AND 20 OTHER STATES SUPPORTING PLAINTIFFS-APPELLANTS**

OFFICE OF THE ATTORNEY
GENERAL
State Capitol Building 1, Room 26-E
Charleston, WV 25305
Telephone: (304) 558-2021
Email: Elbert.Lin@wvago.gov

PATRICK MORRISEY
ATTORNEY GENERAL
Elbert Lin
  *Solicitor General*
Erica N. Peterson
Gilbert Dickey
  *Assistant Attorneys General*

*Counsel for* Amicus Curiae *the State of West Virginia*

# TABLE OF CONTENTS

TABLE OF CONTENTS ……………………………………………………..i

TABLE OF AUTHORITIES ................................................................................ ii

IDENTITY OF *AMICI* ......................................................................................1

ARGUMENT ......................................................................................................1

   I. The Supreme Court's Recent Decision In Caetano v. Massachusetts Bolsters The Conclusion That The Banned Weapons Fall Within The Protection Of The Second Amendment. .........................................................1

   II. The Supreme Court's Decision Last Term In Reed V. Town Of Gilbert Bolsters The Conclusion That, At A Minimum, Strict Scrutiny Should Be Applied To Maryland's Law. ........................................................................5

   III. The Court Should Not Follow Recent Second Amendment Decisions Of Other Courts of Appeals That Failed To Apply Strict Scrutiny.. ....................8

CONCLUSION ................................................................................................11

# TABLE OF AUTHORITIES

**Cases**

*Commonwealth v. Caetano*,
  26 N.E.3d 688 (Mass. 2015) ..................................................................................4
*District of Columbia v. Heller*,
  554 U.S. 570 (2008) ..................................................................................... *passim*
*Friedman v. City of Highland Park, Ill.*,
  784 F.3d 406 (7th Cir. 2015) ................................................................ 4, 8, 10, 11
*Friedman v. City of Highland Park, Ill.*,
  136 S. Ct. 447 (2015) ............................................................................................11
*Fyock v. Sunnyvale*,
  779 F.3d 991 (9th Cir. 2015) ...................................................................... 8, 9, 10
*Heller v. District of Columbia* ("*Heller II*"),
  670 F.3d 1244 (D.C. Cir. 2011) ............................................................................4
*Kolbe v. Hogan*,
  813 F.3d 160 (4th Cir. 2016) ......................................................................*passim*
*New York State Rifle & Pistol Ass'n, Inc. v. Cuomo*,
  804 F.3d 242 (2d Cir. 2015) ..............................................................................8, 9
*Reed v. Town of Gilbert*,
  135 S. Ct. 2218 (2015) ................................................................................. 6, 7, 8
*State v. Reid*,
  1 Ala. 612 (1840) ..................................................................................................9
*United States v. Chester*,
  628 F.3d 673 (4th Cir. 2010) ............................................................................5, 6
*United States v. Marzzarella*,
  614 F.3d 85 (3d Cir. 2010) ...................................................................................6
*United States v. Playboy Entm't Grp., Inc.*,
  529 U.S. 803 (2000) ..............................................................................................5
*Ward v. Rock Against Racism*,
  491 U.S. 781 (1989) ..............................................................................................5

**Rules**

Fed. R. App. P. 29 .......................................................................................................1

# IDENTITY OF *AMICI*

The States of West Virginia, Alabama, Alaska, Arizona, Florida, Idaho, Kansas, Louisiana, Michigan, Missouri, Montana, Nebraska, New Mexico, North Dakota, Oklahoma, South Carolina, South Dakota, Texas, Utah, and Wyoming, and the Commonwealth of Kentucky filed an *amici curiae* brief in this case with a panel of this Court on November 12, 2014. *Amici* submit this supplemental brief to the *en banc* court to address relevant case law that has issued since the filing of *amici*'s original brief.[1]

# ARGUMENT

**I. The Supreme Court's Recent Decision In *Caetano v. Massachusetts* Bolsters The Conclusion That The Banned Weapons Fall Within The Protection Of The Second Amendment.**

Less than one month ago, the U.S. Supreme Court reiterated in a *per curiam* opinion without dissent that under *District of Columbia v. Heller*, 554 U.S. 570 (2008), the Second Amendment protects all bearable arms. *Caetano v. Massachusetts*, No. 14-10078, slip op. at 1–2 (U.S. Mar. 21, 2016) (per curiam). The Supreme Court summarily reversed a decision of the Supreme Judicial Court of Massachusetts, which had "offered three explanations to support its holding that the Second Amendment does not extend to stun guns." *Id.* at 1. The Supreme Court

---

[1] A State may "file an amicus-curiae brief without the consent of the parties or leave of court." Fed. R. App. Procedure 29(a). *Amici* States have also moved for leave to file under Federal Rule of Appellate Procedure 29(b).

1

rejected all three explanations as inconsistent with "*Heller*'s clear statement that the Second Amendment 'extends . . . to . . . arms . . . that were not in existence at the time of the founding,'" *id.* (quoting *Heller*, 554 U.S. at 582), and the fact that *Heller* had "rejected the proposition 'that only those weapons useful in warfare are protected,'" *id.* at 2 (quoting *Heller*, 554 U.S. at 624–25).

The Supreme Court's *Caetano* decision is relevant to the debate between the panel majority and dissent over whether the weapons at issue here fall within the protection of the Second Amendment. The panel majority answered that question in the affirmative. *See Kolbe v. Hogan*, 813 F.3d 160, 173–78 (4th Cir. 2016) (addressing "whether the particular class of weapons prohibited or regulated by the statute are themselves protected by the Second Amendment"). In contrast, Judge King expressed in dissent his view that "[t]here is sound reason to conclude that the Second Amendment affords no protection whatsoever to the assault rifles and shotguns, copycat weapons, and large-capacity detachable magazines that are banned by the State of Maryland." *Kolbe*, 813 F.3d at 192; *see also id.* at 193 ("I am far from convinced that the Second Amendment reaches the AR-15 and other assault weapons prohibited under Maryland law, given their military-style features, particular dangerousness, and questionable utility for self-defense.").

In particular, *Caetano* makes clear that the panel majority was correct in stressing the conjunction in *Heller*'s exception for "'dangerous *and* unusual

2

weapons.'" 554 U.S. at 627 (emphasis added) (citations omitted). The panel majority reasoned that "*Heller* refers to 'dangerous' *and* 'unusual' conjunctively, suggesting that even a dangerous weapon may enjoy constitutional protection if it is widely employed for lawful purposes, *i.e.*, not unusual." *Kolbe*, 813 F.3d at 178. Judge King disagreed, however, characterizing the panel majority's view of "the dangerous-and-unusual standard [a]s really only concerned with whether a given firearm is unusual, *i.e.*, 'not in common use or typically possessed by the citizenry.'" *Kolbe*, 813 F.3d at 194. This "conception of the dangerous-and-unusual standard," Judge King criticized, "renders the word 'dangerous' superfluous." *Id.* at 195.

Based only on the question of unusualness, the Supreme Court in *Caetano* specifically rejected the Massachusetts high court's reliance on the dangerous-and-unusual exception. The Supreme Court faulted the Supreme Judicial Court of Massachusetts for applying an incorrect test for unusualness. *Caetano*, No. 14-10078, slip op. at 1–2. As Justice Alito noted in his concurring opinion, this analysis by the *per curiam* opinion in *Caetano* "recognizes" that *Heller*'s dangerous-and-unusual exception "is a conjunctive test," *Id.* at 6 (Alito, J. concurring), just as the panel majority in this case concluded. In short, "[a] weapon may not be banned unless it is *both* dangerous *and* unusual." *Id*. This does not mean that the word "dangerous" is superfluous; rather, it simply means that "the

3

relative dangerousness of a weapon is irrelevant when the weapon belongs to a class of arms commonly used for lawful purposes." *Id*.

The *Caetano* decision also establishes that Judge King was incorrect to rely on the Seventh Circuit's reasoning in *Friedman v. City of Highland Park*, 784 F.3d 406 (7th Cir. 2015), that criticized "relying on how common a weapon is at the time of litigation," *Friedman*, 784 F.3d at 409. Finding that analysis to be "circular," *id.*, the Seventh Circuit looked instead to "whether a regulation bans weapons that were common at the time of ratification," *id.* at 410. But *Caetano* makes clear that such an approach is "inconsistent with *Heller*'s clear statement that the Second Amendment 'extends . . . to . . . arms . . . that were not in existence at the time of the founding.'" *Caetano*, No. 14-10078, slip op. at 1 (quoting *Heller*, 554 U.S. at 582).

Importantly, the firearms in this case are far more common today than the stun guns in *Caetano*. The semi-automatic rifles and magazines at issue satisfy this requirement because in 2007 the AR-15 alone accounted for 5.5 percent of all firearms and 14.4 percent of all rifles produced, and in 1994, 18 percent of all firearms held such magazines. *Heller v. District of Columbia* ("*Heller II*"), 670 F.3d 1244, 1261 (D.C. Cir. 2011). The number of stun guns, Caetano conceded, "is dwarfed by the number of firearms." *Commonwealth v. Caetano*, 26 N.E.3d 688, 693 (Mass. 2015).

**II. The Supreme Court's Decision Last Term In *Reed v. Town of Gilbert* Bolsters The Conclusion That, At Minimum, Strict Scrutiny Should Be Applied To Maryland's Law.**

As *amici* urged in their original brief, the application of strict scrutiny to Maryland's law is supported by "looking to the First Amendment as a guide in developing a standard of review for the Second Amendment," as this Court did in *United States v. Chester*, 628 F.3d 673, 682 (4th Cir. 2010); *see also Kolbe*, 813 F.3d at 179 ("In *Chester*, we adopted a First-Amendment-like approach to determining the appropriate level of scrutiny to apply to any given Second Amendment challenge.").[2] "In the analogous First Amendment context," this Court explained, "the level of scrutiny . . . appl[ied] depends on the nature of the conduct being regulated and the degree to which the challenged law burdens the right." *Chester*, 628 F.3d at 682. For example, a content-based speech restriction on noncommercial speech is subject to strict scrutiny, whereas intermediate scrutiny applies to content-neutral time, place, and manner regulations. *Id.* (citing *United States v. Playboy Entm't Grp., Inc.*, 529 U.S. 803, 813 (2000), and *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989)).

Here, Maryland's law more resembles a content-based ban subject to strict scrutiny than a time, place, and manner regulation subject to intermediate scrutiny.

---

[2] Though *amici* urge the application of strict scrutiny under this Court's precedents, *amici* reiterate their position in their original brief that, under the Supreme Court's approach in *Heller*, the traditional levels of scrutiny arguably should not be applied at all. Brief of West Virginia and 20 Other States, ECF No. 33-1, at n.3.

The law does not simply "regulat[e] the manner in which persons may lawfully exercise their Second Amendment rights." *United States v. Marzzarella*, 614 F.3d 85, 97 (3d Cir. 2010) (applying intermediate scrutiny because gun regulation resembled "time, place, and manner" regulation of speech). Instead, the law outright bans weapons of particular types and thus is like a law that discriminates based on the content of what is being said.

The panel majority and the dissent disagreed over the application of the "First-Amendment-like" approach in *Chester*. *Kolbe*, 813 F.3d at 179; *see also id*. at 197 ("We are thus left to conduct the analysis spelled out in our *Chester* decision for selecting between strict and intermediate scrutiny."). The panel majority found strict scrutiny applicable because it concluded the Maryland law "burdens the availability and use of a *class of arms* for self-defense in the home." *Id*. at 179 (emphasis added). In contrast, Judge King applied intermediate scrutiny because he believed that the law "does not . . . prohibit 'an entire category of weaponry.'" *Id*. at 197.

If the Supreme Court's First Amendment jurisprudence is a guide, however, the dispute between the panel majority and the dissent should not matter. Late last term, the Supreme Court decided *Reed v. Town of Gilbert*, 135 S. Ct. 2218 (2015), in which the Court made clear that the concept of content-based discrimination should be applied according to its broad "commonsense meaning." *Id.* at 2227. A

6

speech regulation is content-based and subject to strict scrutiny if the regulation "'on its face' draws distinctions based on the message a speaker conveys." *Id.* "Some facial distinctions based on a message are obvious," the Court explained, "defining regulated speech by particular subject matter." *Id.* But other distinctions "are more subtle, defining regulated speech by its function or purpose." *Id.* "Both are distinctions drawn based on the message a speaker conveys," the Court unequivocally held, "and, therefore, are subject to strict scrutiny." *Id.* The Court specifically rejected the argument that speech regulations are content-based only if they discriminate among certain viewpoints: "[A] speech regulation targeted at specific subject matter is content based even if it does not discriminate among viewpoints within that subject matter." *Id.* at 2230.

This decision should translate to an equally commonsense approach to the application of strict scrutiny in the Second Amendment context. The outright ban of any weapon protected by the Second Amendment—even if not an "entire category of weaponry," *Kolbe*, 813 F.3d at 197 (King, J., dissenting)—is like a speech regulation that facially "draws [a] distinction[] based on the message a speaker conveys," *Town of Gilbert*, 135 S. Ct. at 2227. Such weapons bans, like content-based regulations of speech, should be considered "presumptively

7

unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Id.* at 2226.[3]

## III. This Court Should Not Follow Recent Second Amendment Decisions Of Other Courts Of Appeals That Failed To Apply Strict Scrutiny.

Since *amici* filed their original brief in November 2014, three courts of appeals have issued Second Amendment decisions failing to apply strict scrutiny. All three cases—*New York State Rifle & Pistol Ass'n, Inc. v. Cuomo*, 804 F.3d 242 (2d Cir. 2015); *Fyock v. Sunnyvale*, 779 F.3d 991 (9th Cir. 2015); *Friedman v. Highland Park, Ill.*, 784 F.3d 406 (7th Cir.), *cert denied*, 136 S.Ct. 447 (2015)— were discussed and debated in the now-vacated panel opinions. None should be followed by this Court.

To begin, on October 19, 2015, the Second Circuit applied intermediate scrutiny to New York and Connecticut's bans on semi-automatic firearms that had one or more statutorily enumerated features. *New York State Rifle & Pistol Ass'n*, 804 F.3d at 260-64. The Second Circuit applied intermediate scrutiny because it concluded that "New York and Connecticut ha[d] not banned an entire class of arms." *Id.* at 260. The court premised this conclusion on what it perceived as a concession from the plaintiffs in that case, as well as its determination that other

---

[3] Furthermore, this is consistent with the Supreme Court's instruction in *Heller* that a ban on certain weapons cannot be saved by the fact that "possession of other firearms . . . is allowed." 554 U.S. at 629.

weapons, including non-semiautomatic weapons and semi-automatic weapons without an enumerated feature, remain available. *Id.* at 260–61.

The Second Circuit's reasoning is unpersuasive as applied to this case for at least two reasons. *First*, the plaintiffs did not concede the absence of a ban on an entire class of weapons, but rather disputed the phrase "assault weapon" as a political term that did not accurately describe the banned weapons. Pls.' Br., *New York State Rifle & Pistol Ass'n, Inc. v. Cuomo*, 804 F.3d 242 (2d Cir. 2015), at 17. *Second*, the Second Circuit's reasoning that "numerous alternatives remain for law-abiding citizens to acquire a firearm for self-defense," *New York State Rifle & Pistol Ass'n*, 804 F.3d at 260 (internal quotations omitted), cannot be squared with *Heller*'s rejection of the notion "that it is permissible to ban the possession of . . . [certain firearms] so long as the possession of other firearms . . . is allowed," *Heller*, 554 U.S. at 629.[4]

The Ninth Circuit's decision in *Fyock v. Sunnyvale*, 779 F.3d 991 (9th Cir. 2015), is likewise unpersuasive. In that case, the court applied intermediate

---

[4] The Second Circuit reads this statement of non-substitution to apply only to bans on handguns, *New York State Rifle & Pistol Ass'n*, 804 F.3d at 260 n.98, noting that *Heller* stressed that handguns are "the most popular weapon chosen by Americans for self-defense in the home," *Heller*, 554 U.S. at 629. But the Second Circuit ignores that in the same discussion, the Supreme Court cited favorably to an Alabama Supreme Court decision that explained that "'[a] statute which, under the pretence of regulating, amounts to a destruction of the right . . . would be clearly unconstitutional.'" *Heller*, 554 U.S. at 29 (quoting *State v. Reid*, 1 Ala. 612, 616–617 (1840)).

scrutiny to a prohibition on possession of magazines capable of accepting more than ten rounds of ammunition. *Id.* at 1000. The court found intermediate scrutiny appropriate because other magazines remained available and the law included a grandfather clause for owners of weapons that do not accept lower capacity magazines and were purchased before 2000. *Id.* at 999; Sunnyvale, Cal. Muni. Code § 9.44.050(c)(8). But this reasoning similarly defies the Supreme Court's instruction in *Heller* that an outright ban cannot be saved simply by the availability of other weapons. Moreover, the existence of a narrow grandfather clause does not change the fact that a prohibition on all standard capacity magazines going forward strikes at the core of the Second Amendment.

Finally, the third case since November 2014 that has failed to apply strict scrutiny is the Seventh Circuit's decision in *Friedman v. City of Highland Park*, 784 F.3d 406 (7th Cir.), *cert denied*, 136 S.Ct. 447 (2015). In that case, the court applied its own test rather than one of the established tiers of scrutiny in upholding the City of Highland Park's ordinance prohibiting possession of semi-automatic guns with certain features. *See id.* at 410–11. The Seventh Circuit determined it "better to ask whether a regulation bans weapons that were common at the time of ratification or those that have some reasonable relationship to the preservation or efficiency of a well regulated militia." *Id.* at 410 (internal quotations and citations omitted). The Seventh Circuit concluded that the weapons at issue were not subject

to the Second Amendment's protection under this newly constructed test. *Id.* at 410–12.

Both prongs of this new test are squarely at odds with *Heller* and *Caetano*. *First*, the Seventh Circuit's inquiry into whether the weapons "were common at the time of ratification," 784 F.3d at 410, was expressly rejected by the Supreme Court in *Heller*, 554 U.S. at 582 (rejecting as "bordering on the frivolous" the argument "that only those arms in existence in the 18th century are protected by the Second Amendment"), and again in *Caetano*, No. 14–10078, slip op. at 1 (rejecting the Massachusetts high court's conclusion that the Second Amendment does not extend to weapons that "were not in common use at the time of the Second Amendment's enactment"). *Second*, the Seventh Circuit's inquiry into whether weapons have a "reasonable relationship to the preservation or efficiency of a well regulated militia," *Friedman*, 784 F.3d at 410, is also directly contrary to *Heller*, 554 U.S. 624–25 (rejecting the argument that "only those weapons useful in warfare are protected"), and *Caetano*, No. 14–10078, at 2 (same).[5]

## CONCLUSION

For these reasons and the reasons stated in *amici*'s original brief, the District Court's judgment should be reversed.

---

[5] *See also Friedman v. City of Highland Park, Ill.*, 136 S. Ct. 447, 448 (2015) (Thomas, J., dissenting from denial of certiorari) ("Based on its crabbed reading of *Heller*, the Seventh Circuit felt free to adopt a test for assessing firearm bans that eviscerates many of the protections recognized in *Heller* and *McDonald*.").

Respectfully submitted,

PATRICK MORRISEY
ATTORNEY GENERAL

/s/ Elbert Lin
Elbert Lin
   *Solicitor General*
   *Counsel of Record*
Erica N. Peterson
Gilbert Dickey
   *Assistant Attorneys General*
OFFICE OF THE ATTORNEY GENERAL
   OF WEST VIRGINIA
State Capitol Building 1, Room 26-E
Charleston, WV 25305
Telephone: (304) 558-2021
Email: Elbert.Lin@wvago.gov

April 11, 2016

# COUNSEL FOR ADDITIONAL AMICI

**Luther Strange**
Attorney General
State of Alabama
501 Washington Ave.
Montgomery, AL 36130
(334) 242-2848

**Craig W. Richards**
Attorney General
State of Alaska
P.O. Box 110300
Juneau, AK 99811
(907) 465-3600

**Mark Brnovich**
Attorney General
State of Arizona
1275 West Washington Street
Phoenix, AZ 85007
(602) 542-8986

**Pamela Jo Bondi**
Attorney General
State of Florida
The Capitol, PL-01
Tallahassee, FL 32399
(850) 414-3688

**Lawrence G. Wasden**
Attorney General
State of Idaho
P.O. Box 83720
Boise, ID 83720
(208) 334-2400

**Derek Schmidt**
Attorney General
State of Kansas
120 SW 10th Ave, 2nd Floor
Topeka, KS 66612
(785) 296-2215

**Andy Beshear**
Attorney General
Commonwealth of Kentucky
700 Capital Avenue, Suite 118
Frankfort, KY 40601
(502) 696-5650

**Jeff Landry**
Attorney General
State of Louisiana
P.O. Box 94095
Baton Rouge, LA 70804
(225) 326-6000

**Bill Schuette**
Attorney General
State of Michigan
P.O. Box. 30212
Lansing, MI 48909
(517) 373-1110

**Chris Koster**
Attorney General
State of Missouri
Supreme Court Building
207 West High Street
Jefferson City, MO 65101
(573) 751-3321

**Timothy C. Fox**
Attorney General
State of Montana
P.O. Box. 201401
Helena, MT 59620
(404) 444-2026

**Douglas Peterson**
Attorney General
State of Nebraska
2115 State Capitol
Lincoln, NE 68509
(402) 471-2682

**Hector Balderas**
Attorney General
State of New Mexico
P.O. Drawer 1508
Santa Fe, NM 87504
(505) 827-6000

**Wayne Stenehjem**
Attorney General
State of North Dakota
600 E. Boulevard Avenue
Bismarck, ND 58505
(701) 328-2210

**E. Scott Pruitt**
Attorney General
State of Oklahoma
313 N.E. 21st Street
Oklahoma City, OK 73105
(405) 521-3921

**Alan Wilson**
Attorney General
State of South Carolina
P.O. Box. 11548
Columbia, SC 29211
(803) 734-3970

**Martin J. Jackley**
Attorney General
State of South Dakota
1302 E. Highway 14, Suite 1
Pierre, SD 57501
(605) 773-3215

**Ken Paxton**
Attorney General
State of Texas
P.O. Box 12548
Austin, TX 78711
(512) 463-2100

**Sean Reyes**
Attorney General
State of Utah
State Capitol, Rm. 230
Salt Lake City, UT 84114
(801) 538-9600

**Peter K. Michael**
Attorney General
State of Wyoming
123 State Capitol
Cheyenne, WY 82002
(307) 777-7841

# CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Fed. R. App. P. 29 & 32(a)(7)(B) because this brief contains 2,746 excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman.

Date: April 11, 2016

/s/ Elbert Lin
Elbert Lin
Office of the West Virginia Attorney General
State Capitol Building 1, Room E-26
Charleston, WV 25305
Telephone: (304) 558-2021
Fax: (304) 558-0140
E-mail: elbert.lin@wvago.gov

Counsel for *Amicus Curiae* State of West Virginia

**CERTIFICATE OF SERVICE**

I certify that on April 11, 2016, the foregoing document was served on the counsel of record for all parties through the CM/ECF system. Sixteen paper copies of this brief will be sent to the Clerk of Court via Federal Express.


/s/ Elbert Lin                                  April 11, 2016
Elbert Lin                                       Date