No. 14-1945

# In the
# United States Court of Appeals
# for the Fourth Circuit

◆

**STEPHEN KOLBE, *et al.*,**
Plaintiffs-Appellants

v.

**LAWRENCE J. HOGAN, JR., GOVERNOR, *et al.*,**
Defendants-Appellees

◆

On Appeal from the United States District Court
for the District of Maryland
No. 1:13-cv-02841-CCB (Hon. Catherine C. Blake)

◆

**PLAINTIFFS-APPELLANTS' REPLY IN SUPPORT OF
MOTION TO SUPPLEMENT JOINT APPENDIX**

◆

John Parker Sweeney
T. Sky Woodward
James W. Porter, III
Marc A. Nardone
BRADLEY ARANT BOULT CUMMINGS LLP
1615 L Street N.W., Suite 1350
Washington, D.C. 20036
P (202) 719-8216
F (202) 719-8316
JSweeney@babc.com

Attorneys for Appellants

Plaintiffs-Appellants submit this reply in further support of their motion to supplement the joint appendix.

Both the district court (*Kolbe v. O'Malley*, 42 F. Supp. 3d 768, 784-85 (D. Md. 2014)) and the Panel (*Kolbe v. Hogan*, 813 F. 3d 160, 174 (2016)) relied on Mr. Curcuruto's estimates that there were more than 8.2 million Banned Firearms and 75 million Banned Magazines in the United States as of 2012 data. Unsurprisingly, as Plaintiffs-Appellants' Motion to Supplement demonstrates, there are now more.

The State waived any objections it had to Mr. Curcuruto's estimates when it assumed for purposes of its motion for summary judgment that "plaintiffs could demonstrate that there are 9 million assault weapons in the United States." JA2762 n. 12. Moreover, the State never objected to Mr. Curcuruto's 75 million estimate for standard magazines with a capacity greater than 10.

As the State acknowledges (State Response at 2), Mr. Curcuruto's employer, plaintiff The National Shooting Sports Foundation, Inc. (the "NSSF"), is "the trade association for the firearms and ammunition industry." What could be a more knowledgeable and reliable source for this data? The NSSF's manufacturer members rely on such information from the NSSF for use in conducting their own business affairs. *See* Response at E.13. As the State acknowledges and indeed relies upon in its response (*see*, *e.g.*, *id*. at n.1), the State had a full opportunity to depose Mr.

Curcuruto on his methodology and underlying data. The State's objection seems to be that "Plaintiffs have not provided sufficient supporting data" for the updated estimates (State Response at 3). The State's position cannot be reconciled with its inclusion, without providing any supporting data, of flawed *Mother Jones* data (which the Plaintiffs challenged on *Daubert* grounds below (JA 3002-003, 3007)) in its supplemental en banc brief (Defendants' Supplemental Brief at 20-21). The State seems to think that "publicly available" sources like *Mother Jones* are somehow more authentic and reliable than the acknowledged industry data expert, even though the data underlying the *Mother Jones* articles have not been investigated or researched by the State or its experts. J.A. 351 (Declaration of Christopher Koper, p.9, n.16 ("I have not independently investigated or researched the mass shooting incidents reported by *Mother Jones* but am simply using the data as it appears in *Mother Jones*'s updated data set.")).[1]

---

[1] *See also* the transcript from the district court hearing on the Cross-Motions for Summary Judgment:
> THE COURT: And did any of the experts in this case do that, look at the Mother Jones data, but also go back and look at the public press reports that underlie it?
> MR. FADER: No. Yes, there are some instances in which they went and looked at press reports, but there was no systematic review of that information to identify whether every single entry was correctly reported from any news source.

J.A. 81.

The State cannot have it both ways. Either there are significant disputes as to the material facts and expert opinions underlying the district court's grant of summary judgment to the State that must be resolved through evidentiary hearing or trial, as Plaintiffs have demonstrated (s*ee* Plaintiffs' Opening Br. at pp. 53-61), or all reasonably reliable information comes in. *Cf. Kolbe*, 813 F. at 184, n.12 ("In light of our decision to remand the Second Amendment claim, we need not address Plaintiffs' arguments that the district court committed error by granting summary judgment to the State when there were several material facts in dispute....").

The State, having already waived any objection it might at one time have made to the methodology that produced the production and importation estimates it now disputes, comes at the eleventh hour to complain about the specific numbers being updated without offering its own estimates in response. It is indisputably the State's burden to show that these firearms and magazines are outside the scope of the Second Amendment's protections. *See*, *e.g.*, *United States v. Chester*, 628 F.3d 673, 680 (4th Cir. 2010). Yet the State complains about the updated estimates produced by Plaintiffs while simultaneously failing to provide contrary estimates in support of its burden. The State's failure to controvert Plaintiffs' estimates with estimates of its own is sufficient grounds, standing alone, to reject its late-raised objections.

In any event, rather than overstating the actual numbers, these estimates are actually quite conservative: Banned Firearms have been commercially available since the early 1960s, yet Mr. Curcuruto's estimates for the Modern Sporting Rifles are based on data beginning only in 1990. Banned Magazines have been readily available for nearly twice that time. Also, the estimates, as noted in the Supplemental Declaration, only go through 2014, and there is no reason to assume that the production trend has reversed course in the subsequent period of some 16 months since the end of 2014. The actual numbers today are very likely significantly higher yet than these updated estimates.

The State is quite correct, of course, that these numbers are just estimates, but misses the point of them entirely. Precise numbers are not necessary. The magnitude of these estimates clearly illustrate the relative ubiquity and increasing popularity of the Banned Firearms and Magazines, as has been recognized by the courts reviewing this ban and the similar bans in a few other jurisdictions.

In conclusion, while it is understandable that the State might want to wish away the updated estimates provided in the Supplemental Declaration (as well as the underlying estimates upon which the district court and Panel have already relied), their significance cannot be disputed. The State cannot seriously dispute that it has banned from the homes of law-abiding citizens firearms and magazines that are commonly kept for lawful purposes, including the most popular class of rifles as

well as magazines so common they are standard. Plaintiffs respectfully request that this Court grant their motion and allow Plaintiffs to supplement the joint appendix.

Respectfully submitted,

*/s/ John Parker Sweeney*
John Parker Sweeney
T. Sky Woodward
James W. Porter, III
Marc A. Nardone
BRADLEY ARANT BOULT CUMMINGS LLP
1615 L Street N.W., Suite 1350
Washington, D.C. 20036
P (202) 719-8216
F (202) 719-8316
JSweeney@babc.com

Attorneys for Appellants

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 15th day of April, 2016, the foregoing was served via the Court's appellate CM/ECF system, which will forward copies to Counsel of Record.

*/s/ John Parker Sweeney*
John Parker Sweeney
